THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BOBBIE EARL COLLINS,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S [27] MOTION TO SUPPRESS EVIDENCE**<br><br>Case No. 1:23-cr-00046-DBB<br><br>District Judge David Barlow |

Before the court is Bobbie Earl Collins' Motion to Suppress Evidence.[1] Having considered the briefings and related exhibits, the evidence presented during the evidentiary hearing occurring on December 4, 2023, and the arguments of counsel at the hearing held February 26, 2024, the court denies the motion.

## BACKGROUND

On June 21, 2023, Mr. Collins was indicted and arrested on charges of possession of a firearm as a felon and for possessing a stolen firearm.[2] After the court granted his motion for discovery, Mr. Collins filed a motion to suppress evidence on October 10, 2023.[3] An evidentiary hearing on the motion took place on December 4, 2023. Mr. Collins seeks to suppress the evidence of a firearm Officers Crane and Johnsen discovered during the search of his vehicle and "any evidence obtained following the discovery of the firearm."[4]

---

[1] ECF No. 27, filed October 10, 2023.
[2] ECF No. 2; filed June 21, 2023; ECF No. 3, filed June 21, 2023.
[3] ECF No. 27, filed October 10, 2023.
[4] ECF No. 45, filed January 1, 2024.

1

Officer Aryus Crane is a police officer who has been with the Layton City Police Department since 2019.[5] He received specialized training about how to identify indicators of narcotics trafficking and how to identify concealed narcotics within vehicles.[6]

Officer Tanner Johnsen is police officer who has been with the Layton City Police Department for two years.[7] He received trainings on the identification of narcotics and narcotics trafficking.[8]

On March 12, 2023, Officer Crane was working as a K-9 officer in the patrol unit.[9] After observing a vehicle make two traffic violations, Officer Crane turned on his lights and initiated a traffic stop.[10] Two individuals were in the vehicle.[11] The driver was later identified as the Defendant, Mr. Collins.[12] As Officer Crane approached the vehicle, he immediately identified a very strong odor of marijuana smoke.[13] Officer Crane asked for their identification and car registration information.[14] As the passenger opened the glove box to retrieve the registration documents, Officer Crane saw a glass pipe in the compartment.[15] Due to his experience and training, he believed this was likely a pipe used to smoke marijuana.[16]

Officer Crane then ran the names of both the passenger and the Defendant and discovered that both individuals had active warrants for their arrest.[17] Officer Crane then had them exit the

---

[5] Evid. Hrg. Tr. 6:14–16 ("Tr.").
[6] Tr. 7:6–22.
[7] Tr. 47:14–18.
[8] Tr. 48:8–15.
[9] Tr. 7:5.
[10] Tr. 9:22–23.
[11] Tr. 13:5–9.
[12] Tr. 13:5–11.
[13] Tr. 12:23-13:3.
[14] Tr. 13:24–25, 14:1–3.
[15] Tr. 14:6–10.
[16] Tr. 14:6–10.
[17] Tr. 17:3–4.

vehicle and arrested them.[18] Incident to the arrest, he searched both individuals and discovered marijuana products, drug paraphernalia, and a knife on the passenger.[19] Only a cellphone was found on the Defendant's person.[20] Officer Crane proceeded to search the vehicle with his K-9.[21] The dog did not alert to the presence of narcotics.[22] However, Officer Crane stated that this was not surprising because the dog was not trained for marijuana searches.[23]

Officer Crane then searched the vehicle for drugs or related contraband.[24] He started with the glove box because that was where he had initially seen drug paraphernalia.[25] In the glove box, he found the pipe he had seen earlier, a scale, small baggies, fentanyl test strips, and some knives.[26] In light of the discovery of these items, Officer Crane also searched the cabin air filter area located behind the glove box compartment.[27] Officer Crane stated that in his experience, it was common for people to stash contraband in the cabin filter space.[28] His search of this area revealed that the cabin air filter was missing.[29] This caught his attention because based on his training and experience with vehicle searches, signs that the cabin filter had been manipulated or removed likely indicated deeper concealment of items within the vehicle.[30] He then decided to

---

[18] Tr. 18: 6–8.
[19] Tr. 18:10–11.
[20] Tr. 18:12–13.
[21] Tr. 18:14–16.
[22] Tr. 18:17–18.
[23] Tr. 18:19–19:1. The dog was trained only for methamphetamine, heroin, cocaine, psilocybin, and ecstasy. Tr. 18:23–24.
[24] Tr. 19:4–11.
[25] Tr. 19:9–11.
[26] Tr. 20:15–16.
[27] Tr. 20: 17–14.
[28] Tr. 20:19–20.
[29] Tr. 20:19–24. Officer Crane stated that he "quickly noticed that the [cabin filter space] had been manipulated or wasn't as it should be, missing the pieces in the cabin filter area."
[30] Tr. 21:1–10.

do a thorough search of the car, including the places where he had found contraband in prior vehicle searches. Among these places was under the hood of the car.[31]

At this point, Officer Johnsen arrived to assist with the search of the vehicle.[32] Officer Johnsen searched the main cabin area and found a loaded magazine between the driver's seat and the center console of the vehicle.[33] Officer Crane then told Officer Johnsen that he needed to be thorough in his search considering that the cabin air filter was missing.[34] Loose rounds matching the caliber of the magazine were also found in the vehicle.[35] Officer Crane next questioned the Defendant about the magazine, asking him where the associated gun was located.[36]

Officer Crane believed that the magazine indicated a missing weapon was hidden within the vehicle or nearby.[37] He believed this because he had experience with individuals who, upon seeing police approaching, "racked" their weapons and disposed of them somewhere nearby.[38] Officer Crane had an officer check the nearby area for the missing gun, which could have been thrown from the vehicle as it was being pulled over.[39] The "rack and drop" theory was also not the only theory he was considering. He also believed that it may have been hidden within the car

---

[31] Defendant disputes that Officer Crane stated that it was his intention to search the entire car (including the hood). Reply in Support of Mot. to Supp. 2, ECF No. 47, filed February 1, 2024. Defendant points out that Officer Crane did not directly state that he intended to search the entire vehicle, including the hood, but rather only that "I have experience and history of locating things underneath the hood. By things, contraband, so it is common for us to check under the hoods for those items as well." Tr. 27: 8–12. The quoted excerpt in Defendant's reply briefing excludes the follow-up question from the prosecutor: "Q: Would that have been doubly true because of the air filter missing? A: Yeah. Especially with seeing the air filter missing, and cues that there might be a deep concealment." Tr. 27: 13-16.
[32] Tr. 19:20–22.
[33] Tr. 22:12–14. Officer Johnsen found the magazine almost thirty minutes into the stop. Gov't Ex. 6 28:58.
[34] Gov't Ex. 6. 29:55–30:01 (dashboard camera footage from March 12, 2023).
[35] Tr. 55:11–20.
[36] Tr. 34:16–20.
[37] Tr. 23:19–24:11.
[38] Tr. 23:23–24:4.
[39] Tr. 25:9–15.

along with other drug or firearm contraband.[40] Officer Johnsen also expected to find a gun, though he was not confident that the situation involved a "rack and drop."[41]

Officers Crane and Johnsen continued searching for the missing gun as well as any related drug or firearm contraband.[42] Audio from the night of the search indicates that the officers believed that items or compartments were hidden within the vehicle. In the dash camera footage, Officer Crane is seen looking into the gas cap area.[43] At another point, Officer Crane presses on the back seat and states that "it feels like the seat is soft."[44] Officer Johnsen responds, "something is not right with this car."[45] A third officer tells Officer Crane to move the seat and lift it up, apparently to check for hidden compartments beneath or inside the seat.[46]

During the evidentiary hearing, Officer Johnsen noted that in similar circumstances, it is his "typical protocol" when searching the driver's space to pop the hood from inside the vehicle, then conduct a search around the vehicle and then end with the hood space."[47] After about forty minutes into the stop and ten minutes after finding the magazine, Officer Johnsen is seen walking over to the front of the car, opening the hood, and almost immediately finding the firearm.[48] The gun was found on the passenger's side of the engine compartment, just behind the headlight.[49]

---

[40] While conducting the search of the vehicle, Officer Crane is heard in dash camera footage explaining another theory about where the gun was located. He supposes that the gun may have been hidden within the car based on an interdiction page. He says that "I saw this thing today about people stashing guns on the pull apart bits of the car on an interdiction page." Gov't Ex. 6 38:56. An interdiction page refers to a social media page where police officers "basically post what they found, where they found it, kind of general circumstance of their traffic stop and what not as a training tool across law enforcement to help each other." Tr. 59:1–4.
[41] Tr. 60:21–61:5.
[42] Tr. 27:8–16.
[43] Gov't Ex. 6 37:53.
[44] Gov't Ex. 6 33:45.
[45] Gov't Ex. 6 33:46.
[46] Gov't Ex. 6 34:00.
[47] Tr. 58:12–17.
[48] Gov't Ex. 6 38:30–44.
[49] Tr. 29:14–17.

Officer Johnsen testified that typically when he looks in the engine compartment area, he "look[s] for small pieces of information such as like tooling marks or dust being disturbed."[50] But here, it was "pretty clear."[51]

A few minutes later, Officer Crane read *Miranda* warnings to Mr. Collins and questioned him about the gun.[52]

## STANDARD

The Fourth Amendment protects the public from unreasonable searches and seizures.[53] A reasonable search and seizure requires a valid warrant based on probable cause,[54] unless an exception applies.[55] If evidence is seized in violation of the Fourth Amendment, the evidence is precluded from admission under the exclusionary rule,[56] which includes "both the primary evidence obtained as a direct result of an illegal search or seizure," as well as "evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree."[57]

"[T]he defendant bears the burden of proving whether and when the Fourth Amendment is implicated,"[58] and [t]he government then bears the burden of proving that its warrantless actions were justified [by an exception to the warrant requirement]."[59] Here, there is no question that the Fourth Amendment applies. The issue is whether the government's warrantless search was justified.

---

[50] Tr. 60:1–4.
[51] Tr. 60:4.
[52] Gov't Ex. 6 39:00–45:00.
[53] U.S. Const. amd. IV.
[54] *See, e.g., Terry v. Ohio*, 392 U.S. 1, 20 (1968).
[55] *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971).
[56] *Mapp v. Ohio*, 367 U.S. 643, 648 (1961).
[57] *Utah v. Strieff*, 579 U.S. 232, 237 (2016).
[58] *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020) (quoting *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017)).
[59] *Id.* (quoting *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994)).

**DISCUSSION**

Mr. Collins does not challenge the initial stop of the vehicle.[60] Nor does he challenge the officers' testimony that they could smell marijuana smoke,[61] that Officer Crane saw the glass pipe and had probable cause to search the glovebox,[62] or that the officers had probable cause to search "the passenger compartment and trunk."[63]

At issue here is whether Officer Crane and Johnsen had probable cause to search underneath the hood of the vehicle. The government contends that the automobile exception to the warrant requirement applies.[64] This exception involves the "warrantless search of an automobile, based on probable cause to believe that the vehicle contain[s] evidence of crime."[65] "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence.[66] "A police officer may draw inferences based on his own experience in deciding whether probable cause exists."[67] Once probable cause to search a vehicle is established, officers are "justifie[d to] search . . . *every part of the vehicle and its contents* that may conceal the object of the search." [68] "The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found."[69] The scope is not defined by "the

---

[60] Mem. in Supp. of Def's Mot. to Suppress Evid. 1–9 ("Mot. to Suppress"), ECF No. 45, filed January 18, 2024.
[61] *Id.*
[62] *Id.*
[63] Reply 3.
[64] United States' Resp. to Def's Mot. to Suppress 9–12 ("Resp. to Mot. to Suppress"), ECF No. 46, filed January 25, 2025.
[65] *Carroll v. United States*, 267 U.S. 132, 151 (1925).
[66] *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008) (quoting *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001).
[67] *Ornelas v. U.S.*, 517 U.S. 690, 700 (1996) (citing *United States v. Ortiz*, 422 U.S. 891, 897 (1975).
[68] *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).
[69] *Ross*, 456 U.S., at 824.

nature of the container in which the contraband is secreted."[70] At bottom, "[t]he scope of a warrantless search [of an automobile under the automobile exception] based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause."[71] "Only the prior approval of the magistrate is waived; the search is otherwise is as the magistrate could authorize."[72] And "[w]hen a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between . . . glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest of prompt and efficient completion of the task at hand."[73]

The burden is on the government to establish that the automobile exception applies. Like any search, the reasonableness of an automobile search depends on the totality of the circumstances.[74] "As the phrase suggests, a 'totality of the circumstances test' does not depend on whether any particular factor is innocent when considered in isolation, but on whether, taken as a whole, the facts observed by the law enforcement officers indicate a fair probability that the vehicle contains contraband or evidence."[75] The government contends that when considering what had been found prior to Officer Johnsen opening the hood of the car, it was reasonable for the police to believe that they would find contraband or other evidence of criminal activity.[76]

---

[70] *Id.*
[71] *United States v. Burgess*, 576 F.3d 1078, 1087 (10th Cir. 2009) (quoting *Ross*, 456 U.S. at 823).
[72] *Ross*, 456 U.S., at 823.
[73] *Burgess*, 576 U.S. at 1087 (citing *Ross*, 456 U.S. at 821).
[74] *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008) (quoting *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001).
[75] *United States v. Ledesma*, 447 F.3d 1307, 1316 (10th Cir. 2006) (citing *United States v. Nielsen*, 9 F.3d 1487, 1489–90 (10th Cir. 1993)).
[76] Resp. to Mot. to Suppress 11–12. The government's briefing also occasionally suggests that some subpart of the totality of the circumstances would have been enough to justify opening the car's hood. Because the court's task is to consider the totality of the circumstances, the court does not engage with those arguments.

The following facts had already been established prior to Officer Johnsen opening the hood of the car: the strong smell of marijuana smoke and the presence of what appeared to be a marijuana pipe, a scale, little baggies, fentanyl test strips, knives, loose ammunition rounds, and a loaded magazine.[77] A missing air filter was discovered just behind the glovebox, which the officers testified their training and experience suggested was an indicator of further concealment of contraband in the vehicle, including in voids anywhere within the vehicle.[78] In sum, the officers encountered a vehicle with a passenger cabin area containing substantial drug-related contraband, some evidence of concealment, and evidence that also strongly implied the existence of a missing weapon.

As noted earlier, Mr. Collins does not dispute that the officers had enough evidence to search the passenger compartment of the vehicle.[79] Instead, Mr. Collins argues that the officers lacked probable cause to open the hood of the car as they continued their search. Mr. Collins focuses primarily on three Tenth Circuit cases.

In *United States v. Parker*, the Tenth Circuit considered whether officers had probable cause to search a vehicle's trunk.[80] As Mr. Collins notes,[81] the court found that when "an officer smells marijuana in the passenger compartment of a vehicle, he has probable cause to search the passenger compartment."[82] The "odor of marijuana in the passenger compartment of a vehicle does not, however, standing alone, establish probable cause to search the trunk of the vehicle."[83]

---

[77] Tr. 20:15–16.
[78] Tr. 20:19–24; 62:9-63:4.
[79] Reply 3.
[80] *United States v. Parker*, 72 F.3d 1444 (10th Cir. 1995).
[81] Mot. to Suppress 9.
[82] *Parker*, 72 F.3d at 1450 (citing *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993).
[83] *Id.* (citing *Nielsen*, 9 F.3d at 149).

Instead, "an officer obtains probable cause to search the trunk of a vehicle once he smells marijuana *and* finds corroborating evidence of contraband."[84] The court then found that because corroborating evidence was found, "the officers acquired probable cause to search the entire car, including the trunk and any containers therein that might contain contraband."[85]

So too here. The officers smelled a strong marijuana smell emanating from the passenger compartment, giving them probable cause to search the car. While the passenger retrieved the car's registration from the glove box, Officer Crane observed an apparent marijuana pipe.[86] When he then searched the glove box, he saw not only the pipe, but also a scale, baggies, and fentanyl strips, as well as knives.[87] Soon after, he discovered the missing air filter.[88] The other officer, Officer Johnson, then found the loaded magazine.[89] Like in *Parker*, the officers had probable cause to search beyond the passenger compartment because they not only smelled marijuana, but also then found extensive corroborating evidence of contraband in the passenger compartment before searching elsewhere. Mr. Collins' position, at least impliedly, seems to be that opening the hood of a car requires something different or more than the "corroborating evidence" *Parker* found necessary "to search the entire car, including the trunk."

For that, he turns to two unpublished opinions, both of which affirmed denials of motions to suppress. In *United States v. Benson*, the court found, under the totality of the circumstances, that officers were justified in the warrantless search of the vehicle "which, of course, included

---

[84] *Id.*
[85] *Id.*
[86] Tr. 14:6–10.
[87] Tr. 20:15–16.
[88] Tr. 21:1–10.
[89] Tr. 22:12–14.

10

the space under the hood."[90] Those circumstances included a tip from an informant about the defendant, the car, and that there might be drugs and a firearm under the hood of the car.[91] When the defendant was pulled over, a passenger dropped some drugs on the ground and a box of ammunition was observed on a car seat.[92] An officer then checked under the hood and found drugs and a firearm.[93]

In *United States v. Walker*, the court again applied the totality of the circumstances to find a warrantless search, which included under the car's hood, was proper.[94] In *Walker*, the court found it significant that "the officers conducted the search of the hood area after finding a round of ammunition and suspected 'drug paraphernalia,' i.e., aluminum foil and small plastic baggies, in the trunk of the car pursuant to a valid inventory search."[95] The court also considered a suspicious hole in the grill of the car, together with the officer's knowledge of the practice of hiding contraband under cars, and her observation of the defendant lingering near the hood of the car.[96]

The facts of *Benson* and *Walker* differ significantly from each other. *Benson* involved an informant with a specific tip, drugs dropped from a passenger, and a box of ammunition in the car.[97] *Walker* had none of those things, but instead had one round of ammunition, drug paraphernalia, a suspicious hole and suspicious conduct by the defendant.[98] Here, the officers

---

[90] *United States v. Benson*, 9 F.3d 118, at *2 (10th Cir. 1993) (unpublished).
[91] *Id.* at *1.
[92] *Id.*
[93] *Id.*
[94] *United States v. Walker*, 81 F. App'x 294 (10th Cir. 2021) (unpublished).
[95] *Id.* at 298.
[96] *Id.* at 299.
[97] *Benson,* 9 F.3d at *1.
[98] *Walker*, 81 F. App'x at 298–99.

had a strong marijuana smell coming from the vehicle, which led to the glove box being opened to reveal drug paraphernalia (a likely marijuana pipe), when then led to a search of the glove box revealing more drug paraphernalia (small baggies, a scale, fentanyl test strips), which then led to the discovery of a suspiciously missing air filter behind the glove box and proximate to the engine compartment/hood area, as well as a loaded magazine and loose rounds without the gun to which they belonged.

While the facts of all these cases are different, the test is the same. The "permissible scope of a warrantless car search 'is defined by the object of the search and the places in which there is probable cause to believe that it may be found.'"[99] Here, before the officer popped the hood, the object of the search included drugs, drug paraphernalia, and the gun for which the ammunition already had been found. The places those things reasonably may be found included under the hood of the vehicle, even if the passenger compartment and the trunk were more likely spots. Not only had the officers smelled marijuana and already located corroborating evidence in the form of significant drug paraphernalia in the vehicle, but they also had observed the missing air filter, suggesting the possible use of voids for concealment, and also had found a loaded magazine without the expected gun to which it belonged. The totality of these circumstances, which further included the officers' training and experience with evidence founds in voids,[100] was sufficient for them to continue their search by unlatching the hood of the car.

Mr. Collins disputes the importance of the missing air filter because the gun would have not fit through it and so could not have been transferred from the passenger compartment to the

---

[99] *Wyoming v. Houghton*, 526 U.S. at 302 (quoting *United States v. Ross*, 456 U.S. at 824); *see also California v. Acevedo*, 500 U.S. at 579–80 (same).
[100] Tr. 27:10–16; 41:3–42:18; 44:1–11; 56:21–57:7; 57:23–58:2; 63:12–64:21; 65:9–66:7.

engine area during the traffic stop.[101] But the gun did not need to make its way from the passenger area to under the hood during the traffic stop for probable cause to exist. Put differently, the missing air filter did not need to be the physical conduit for the gun. What was necessary was the "fair probability" that the gun, drugs, or drug paraphrenalia might be found there based on all the circumstances considered together.[102] And the totality of the facts here: the marijuana smell, the various drug paraphernalia, the missing air filter, and the ammunition missing its gun together were enough.[103]

Mr. Collins also emphasizes that one of the theories one or both of the officers had was that the gun had been "racked and dropped" in the car or thrown out the window, instead of staged under the hood of the car.[104] There is no requirement that the officers look only in the very most likely places or only in the places most supported by their initial thinking.[105] As the Supreme Court has held, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."[106] Here, the officers looked for the gun in the passenger compartment and outside the vehicle. Not finding it, but still expecting it, they looked in a place where experience or training

---

[101] Mot. to Suppress 12–13.
[102] *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008) (quoting *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001).
[103] There are at least two other circuit courts cases finding probable cause for such searches. See *United States v. Hayes*, 90 F.4th 904 (7th Cir. 2024) (finding probable cause for searching air filter in engine based on officers' experience with hiding spots after officers found screwdriver in car); *United States v. Goncalves*, 642 F.3d 245 (1st Cir. 2011) (finding probable cause for searching the engine compartment based on officers' experience with drug dealers using it as a hiding place and informant's tip that defendant was using the car to make drug deliveries).
[104] Mot. to Suppress 12–13. Officer Johnsen did not seem to fully share Officer Crane's theory. Tr. 60:21–61:5.
[105] Officer Crane's initial testimony about his thoughts after Officer Johnsen found the loaded magazine is simply "At this point now I'm thinking there is a gun somewhere that's unaccounted for in the vehicle." Tr. 23:17–20.
[106] *Ross*, 456 U.S., at 825. Mr. Collins also cites *Ross*' illustrations of what would not be sufficient, including that "[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." *Id.* at 821; *see also United States v. Mirabal*, 876 U.S. 1029, 1033 (10th Cir. 2017). As noted above, this case involves much more evidence than probable cause involving a container located in a trunk.

13

told them contraband reasonably could be hidden—under the hood of the car. That one them did not have high hopes for finding it there is not dispositive. Additionally, the record is clear that Officer Johnsen searched under the hood not only for the gun, but for other contraband including more drugs and drug paraphernalia.

For all of the foregoing reasons, the officer's opening the hood of the car was not an unreasonable search. The object of the search might reasonably have been concealed under the hood. The totality of the circumstances show that their search was supported by probable cause.

## ORDER

Because the government demonstrated that the automobile exception to the warrant requirement applies, Mr. Collins' motion to suppress is DENIED.

Signed February 29, 2024.

                                                BY THE COURT

                                                _____

                                                David Barlow
                                                United States District Judge